UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| JOYCE HAYGOOD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 4:04cv55AS |
| ) | |
| JO ANNE B. BARNHART, ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff, Joyce Haygood, seeks judicial review of the denial of her claim for benefits under Title II of the Social Security Act. The Commissioner of Social Security found Ms. Haygood not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. This Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Ms. Haygood applied for DIB on September 2, 2002, alleging she became unable to work on September 7, 2000, due to an impaired right hand (Tr. 58-60, 88). The state agency denied Ms. Haygood's application initially and on reconsideration. Ms. Haygood, who was represented by counsel, appeared and testified before Administrative Law Judge ("ALJ") Paul R. Armstrong (Tr. 277). A medical expert, Dr. Christopher Stack, and a vocational expert, Gail Ditmore also testified at the administrative hearing (Tr. 27-322). On February 14, 2004, the ALJ denied Ms. Haygood's claim because she perform a significant number of light jobs despite the limitations caused by her impairments, and therefore was not disabled and not entitled to DIB. (Tr. 15-21). The Appeals Council's denial of review (Tr. 4-11, 273-74) left the ALJ's decision as the

Commissioner's final decision in this case. *See* 20 C.F.R. §§ 404.955, 404.981, 422.210(a).

Ms. Haygood timely filed a complaint seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## I. Background

**Statement of Facts**

Ms. Haygood was a "younger person" under the Commissioner's regulations at all times relevant to the ALJ's decision (Tr. 58). *See* 20 C.F.R. § 404.1563(c). She is a high school graduate. (Tr. 94). She worked as a machine operator in a plastics factory from August 1997 through September 2000 (Tr. 89, 281). She alleged that she was unable to work due to carpal tunnel syndrome in her right hand. (Tr. 88, 281-82).

Ms. Haygood had surgery on her right hand and wrist on June 27, 2000 and afterward participated in Occupational therapy (Tr. 117-118, 141-51). In August 2000, Dr. Troiano, who performed her surgery, evaluated Ms. Haygood's right hand and found an "essentially normal" range of motion (Tr. 198). He noted that she had a limited range of motion in her right thumb caused by her "reluctance to move her thumb."

On September 7, 2000, Dr. Troiano indicated that Ms. Haygood could return to work with restrictions on the use of her right hand. Those restrictions were a five pound weight lifting limit and no repetitive twisting, turning, pinching, or gripping (Tr. 195, 197). He further explained that this limitation meant "no more than two cycles/minute" (Tr. 195). He also made a notation on the form that stated, "these are permanent restrictions" (*id*.).

On September 11, 2000, Dr. Troiano reported to Travelers Insurance that Ms. Haygood had a two percent permanent partial impairment rating of the right upper extremity below the

elbow (Tr. 192).  He explained that this was based solely on her range of motion deficits (*id*.). He stated that he was unable to assign an impairment based on grip strength "due to the inconsistent and submaximal effort demonstrated" by Ms. Haygood during testing (Tr. 192).

The ME, Dr. Stack, testified that he did not "see a documented medical impairment that would keep [Plaintiff] from performing at least a full range of light work (Tr. 300).  Dr. Stack stated that Dr. Troiano had been unable to assign an impairment rating based on grip strength due to inconsistent submaximal efforts (Tr. 301).  Therefore, he reasoned, there was no good basis in the record for Dr. Troiano's recommended limitations on twisting, pinching, gripping, or turning (*id*.).  He stated that Dr. Troiano's limitations were "imprecise" because they did not distinguish between her hand and the rest of her right upper extremity (Tr. 302-303).  He indicated that the absence of a valid functional capacity evaluation prevented him from giving an opinion as to Plaintiff's gripping and pinching capabilities (Tr. 306).  He further testified that Ms. Haygood would be helped by using her right hand more (Tr. 308-309).

The ALJ found that Ms. Haygood had not engaged in substantial gainful activity since her alleged onset date (Tr. 16, 20).  He further found that Plaintiff had severe impairments, but none that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*id*.).  The ALJ found that Plaintiff retained the RFC to perform light work "with no repetitive, forceful gripping with the right (dominant) hand and no lifting over five pounds on the right" (*id*.).  He determined that Ms. Haygood could not perform her past work as a machine operator because the exertional requirements of that work exceeded her RFC (Tr. 19, 20).  Finally, the ALJ found that Ms. Haygood was not disabled as defined by the Act because she remained capable of performing a significant number of jobs in the economy (*id*.).

3

## II.  Standard of Review

This court's review of the Commissioner's decision is a limited one.  Unless there is an error of law, the court will uphold the Commissioner's findings of fact if they are supported by substantial evidence.  *Griffith v. Callahan,* 138 F.3d 1150, 1152 (7th Cir. 1998).  Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971).  In making a substantial evidence determination, the court will review the record as a whole, but will not reevaluate the facts, re-weigh the evidence or substitute its own judgment for that of the Commissioner.  *Griffith* 138 F.3d at 1152;  *Brewer v. Chater*, 103 F.3d 1384, 1391 (7th Cir. 1997).  That being said, the ALJ must "build an accurate and logical bridge between the evidence and the result." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir.2000).

With respect to credibility determinations, the ALJ is in the best position to observe the demeanor and veracity of the testifying witnesses. *Griffith* 138 F.3d at 1152.  The court will not disturb the ALJ's weighing of credibility so long as those determinations are based on some support in the record and are not "patently wrong." *Id*.;  *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).  However, the district court is required to critically review the evidence and not simply rubber-stamp the Commissioner's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

## III. Discussion

"Benefits are available only to those individuals who can establish disability under the terms of the Social Security Act." *Estok v. Apfel*, 152 F.3d 636, 638 (7th.Cir.1998).  Under

section 423(c)(1)(B)(1), it is well established that to receive benefits, a disability must have begun or had its inception during the period of insured status. *Bastian v. Schweiker*, 712 F.2d 1278, 1280 (8th Cir. 1983); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir.), *cert.denied*, 444 U.S. 952 (1979). The Seventh Circuit has established that a claimant has the burden of establishing that she is disabled within the meaning of the Social Security Act on or before the date her insured status expired. *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir.1998); *Meredith v. Bowen*, 833 F.2d 659 (7th Cir.1987); *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.1985); *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir.1984); *Jeralds v. Richardson*, 445 F.2d 36, 39 (7th Cir.1971). "The law requires that a claimant demonstrate her disability within the proscribed period of eligibility not prior to or subsequent to the dates in question." *Jeralds,* 445 F.2d at 39. Therefore, "any condition that had its onset or became disabling after plaintiff's insured status expired may not be used as a basis for entitlement to disability benefits." *Couch v. Schweiker*, 555 F.Supp. 651, 654 (N.D. Ind.1982). Plaintiff bears the burden of showing through testimony and medical evidence supported by clinical data and laboratory diagnosis that he was disabled during the period in which he was insured. *Jeralds,* 445 F.2d at 38-39; See also *Reading v. Matthews*, 542 F.2d 993, 997 (7th Cir.1976).

      The claimant must show that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations to the Act create a five-step inquiry in determining whether a claimant is disabled. As previously discussed, the ALJ must consider the applicant's claim in the following sequence:

5

>   (1) whether the claimant is currently employed; (2) whether she has a severe impairment; (3) whether her impairment meets or equals one listed by the Secretary; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. *Clifford* 227 F.3d at 868; citing *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

"An affirmative answer leads either to the next step, or on Steps 3 and 5, to a finding that the claimant is disabled. *Clifford* 227 F.3d at 868. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford* 227 F.3d at 868. The initial burden in steps one through four is on the plaintiff; only at step five does the burden shift to the Commissioner. *Id.*

Ms. Haygood argues that the ALJ erroneously failed to adopt the limitations set by Plaintiff's treating surgeon, Dr. Troiano. She claims that the ALJ erred when he changed the "gripping" limitation in Dr. Troiano's RFC to "forceful gripping" in the ALJ's decision. She also claims that the ALJ's limitation of "repetitive, forceful gripping" is inconsistent with Dr. Troiano's restrictions. A careful review of Dr. Troiano's diagnosis form, however, shows that his restrictions are consistent with the ALJ's findings. That form shows that Dr. Troiano did restrict twisting, turning, pinching, and gripping in the right hand, but that these limitations were parts of a broader restriction on "repetitive work" (Tr. 195). Additionally, there were no spaces on the form to distinguish between "forceful" and "non-forceful" gripping, and Dr. Troiano's report is therefore silent on this point (*id.*). When evaluated together, Dr. Troiano's report and the ALJ's findings are consistent.

Ms. Haygood points out that the "repetitive" component was not included in Dr. Troiano's September 7, 2000 letter to Traveler's Insurance. (Pl. Reply Brief at 1; Tr. 193). She argues that this letter is more detailed than his and should be given controlling weight. The

6

Court's inquiry, however, is not whether some evidence in the record supports the claimant's position, but whether the ALJ's decision is supported by substantial evidence. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112 (1992) (a reviewing court "should not supplant the agency's findings merely by identifying alternative findings that could be supported by substantial evidence).

     More importantly, the ALJ was not required to uncritically accept all of the findings that happened to be favorable to Ms. Haygood's claim.  The Plaintiff clearly accepts the statements made by Dr. Troiano as true, and she must take the good with the bad.  Dr. Troiano qualified his findings by stating that he was unable to assess Plaintiff's grip strength because of Plaintiff's inconsistent, submaximal efforts during the functional capacity evaluation (Tr. 301).  His limitations were based solely on her range of motion deficits and not her grip strength.  Ms. Haygood does not attempt to dispute this point in her brief.  Furthermore, Dr. Stack testified that Dr. Troiano's functional capacity evaluation was invalid because of Ms. Haygood's lack of effort (Tr. 301).  He further stated that Dr. Troiano's assessment was too imprecise because it did not distinguish between her right hand and her entire right upper extremity (Tr. 302).  He concluded that there was no objective medical evidence to support Dr. Troiano's restrictions.  This Court must examine Dr. Troiano's findings in light of the entire record.  Dr. Troiano's letter must be read alongside his other findings and the testimony of Dr. Stack.  When this is done, it clearly shows that the ALJ's findings are supported by substantial evidence in the record as a whole.  It is worth noting again that the claimant bears the burden of establishing her disability.  *See Estok*, 152 F.3d at 640; *Meredith*, 833 F.2d at 659).  In light of her inconsistent and submaximal efforts during the functional capacity evaluation, she has failed to present evidence to support

restrictions beyond those set forth in the ALJ's RFC finding.

Ms. Haygood also argues that the ALJ erred in his colloquy with Ms. Haygood in which, according to Ms. Haygood, he made a "medical decision" that Ms. Haygood does not need her wrist braces and should not be using them (Pl. Brief at 12). She states that "it is clear from his speeches at hearing (sic) that he has an unrealistic view of hand problems" (*id*.). The Court fails to see how this exchange is improper. The testimony cited by the Plaintiff does not show that the ALJ was making a medical diagnosis. Instead, it merely shows that the ALJ suggested a possible course of action that could improve the plaintiff's physical condition. That course of action was also recommended by the medical expert, Dr. Stack (Tr. 308). There is nothing improper about the ALJ's suggestions.

Finally, Ms. Haygood does not dispute the ALJ's conclusion that she could perform a significant number of jobs despite the limitations caused by her impairments, except to say that they are based on a flawed RFC finding. Because the Court finds that substantial evidence supports the ALJ's RFC finding, the ALJ's finding at Step 5 is also proper.

## IV.  Conclusion

Based on the forgoing, the ALJ's decision is **AFFIRMED**.

**IT IS SO ORDERED.**


**Date: November 10, 2005**                              S/ ALLEN SHARP
                                                                                        **ALLEN SHARP, JUDGE**
                                                                                        **UNITED STATES DISTRICT COURT**